# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | |
| CHARLESTON ASSOCIATES, LLC, ) | Chapter 11 |
| ) | Case No. 10-_____ (___) |
| Debtor. ) | |
| ) | |
| ) | |
| ) | |

## MOTION OF THE DEBTOR PURSUANT TO SECTIONS 105(a), 361, AND 363 OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER AUTHORIZING THE USE OF CASH COLLATERAL AND SCHEDULING A FINAL HEARING

Charleston Associates, LLC ("Charleston"), the debtor and debtor-in-possession herein ("Debtor"), submits this motion (the "Motion") pursuant to 105(a), 361 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001-2 of the Local rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for entry of an order, attached hereto as Exhibit A (the "Interim Order") authorizing the Debtor to use cash collateral (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral") and scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion and the entry of a Final Order. In support of this Motion, Debtor respectfully represents:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105, 361, 362 and 363 of the Bankruptcy Code, Rules 2002, 4001, 6003 and 9014 of the Bankruptcy Rules and Rule 4001-2

and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

4.  On June 17 2010, (the "Petition Date"), the Debtor filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of title 11 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no committee has been appointed.

5.  A description of the Debtor's business and the reasons for filing this chapter 11 case is set forth in the Declaration of Martin H. Walrath IV, President of Boca Fashion Village Syndications Group MM, Inc., Manager of Charleston Associates, LLC, in Support of First Day Pleadings (the "Walrath Declaration"), which was filed contemporaneously with this motion and is incorporated herein by reference.

## INTRODUCTION

6.  In the normal course of business, Debtor uses cash on hand and cash flow from rents to fund the operating expenses of the Shopping Center. An inability to use these funds during the chapter 11 case could cripple the Debtor's business operations. Indeed, Debtor must use its cash to, among other things, continue the operation of its business in an orderly manner, maintain business relationships with vendors, suppliers and tenants, and satisfy other operational needs – all of which are necessary to preserve and maintain the Debtor's going concern value and, ultimately, effectuate a successful reorganization.

7.  The Debtor continues to generate revenue from rents and operations and has approximately $194,667 in available cash as of the Petition Date. The Debtor will continue to

replenish its funds with incoming rents which alleviates the need for additional funding – debtor in possession financing or otherwise.

8.  Without use of the Cash Collateral, the Debtor will have no ability to maintain the operation of the Shopping Center. The Debtor will not be able to pay its vendors and its vendors will likely cease to provide goods and services to the Debtor on credit. The Debtor will not be able to service its tenants, maintain the Shopping Center and continue operations. All of these outcomes will cause immediate and irreparable harm to the Debtor's estate. The Debtor, therefore, seeks immediate authority to use the Cash Collateral, as set forth in this motion and in the Interim Order, to prevent immediate and irreparable harm to the Debtor's estate pending the Final Hearing pursuant to Bankruptcy Rule 4001(c).

## **THE DEBTOR'S PREPETITION FINANCING**

9.  The property upon which the Shopping Center conducts its operations is subject to a Deed of Trust and Absolute Assignment of Rents and Leases and Security Agreement (and Fixture Filing) dated as of December 23, 2004 ("Deed of Trust"). The Deed of Trust secures a Promissory Note Secured by Deed of Trust ("Promissory Note"), dated as of December 23, 2004, in the original principal amount of $58 million. The Promissory Note and Deed of Trust are "securitized" and the "technical" beneficiary of the Deed of Trust is Mortgage Electronic Registration Systems, Inc., a Delaware corporation ("MERS" or "Beneficiary"). The trustor of the Deed of Trust is Boca Fashion Village, LLC, the predecessor by merger of the Debtor.

10. The Debtor therefore seeks this Court's approval to use Cash Collateral solely to pay ordinary business and operational expenses and limited administrative costs for a period of 45 days through July 31, 2010, as set forth in the budget attached as Exhibit 1 to the Interim

3

Order.[1]

## TERMS OF THE USE OF CASH COLLATERAL

11.     In accordance with Bankruptcy Rule 4001(b), the principal terms of the Cash Collateral Order include the following:

| | |
|---|---|
| (i) | As stated above, in addition to the Debtor, the Beneficiary may have an interest in the Cash Collateral. |
| (ii) | The Cash Collateral is proposed to be used to pay ordinary business and operational expenses and limited administrative costs as set forth in Exhibit 1. |
| (iii) | The use of cash collateral would be for a 45 day period ending July 31, 2010. |
| (ii) | The Beneficiary is adequately protected because the Debtor will be using incoming rents as Cash Collateral to pay ordinary business expenses in order to maintain the operations and value of the Shopping Center. |
| (iii) | Moreover, based upon the circumstances in this case, the use of cash collateral is warranted to preserve the assets of the estate. |

## PROPOSED USE OF CASH COLLATERAL

12.     The Debtor respectfully requests the use of Cash Collateral to carry on the operation of its business during the pending of this Chapter 11 case. To operate in chapter 11 in a manner consistent with its ordinary course practice, Debtor must have access to cash. Cash collateral will be used to make payments to vendors and to satisfy the other ordinary costs of operation, all in accordance with the Budget attached to the Interim Order. Allowing the Debtor to use Cash Collateral will minimize the damage caused by this Chapter 11 case and will enable the Debtor to avoid any disruption to the Shopping Center, or damage confidence of the vendors and tenants, that might otherwise arise from nonpayment of operational expenses which arise in

---

[1] Debtor will attempt to negotiate a consensual use of Cash Collateral for the period beginning August 1, 2010 with the Beneficiary prior to the expiration of the 45 day period, and will file a separate motion seeking approval of the use of additional Cash Collateral at that time.

the ordinary course of the Debtor's business, even for a limited period of time, would not be possible, and serious and irreparable harm to the Debtor and its estate would occur. The use of Cash Collateral is therefore critical to preserve and maintain the going concern value of the Debtor for the benefit of all stakeholders.

## THE PROPOSED USE OF CASH COLLATERAL SHOULD BE APPROVED

### A. The Use of Cash Collateral is Warranted and Should be Approved

13. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

14. As set forth above, the use of Cash Collateral is necessary for ordinary course operating costs and expenses at the outset of, and during, this Chapter 11 Case. The Debtor's ability to maintain business relationships with their vendors, suppliers, and tenants and to meet other operating expenses is essential to the Debtor's continued viability and the value of its business as a going concern. The use of Cash Collateral is therefore critical to the preservation and maintenance of the going concern value of the Debtors, as well as the value of the Collateral.

### B. The Beneficiary is Adequately Protected

15. The Beneficiary is adequately protected because the Debtor will be using Cash Collateral only to pay ordinary business and operational expenses. No funds will be taken out of the Debtor's business. If expenses are not promptly paid, the Shopping Center will be rendered worthless. The use of Cash Collateral will serve to preserve the value of the Shopping Center so that all creditors, including the Beneficiary, will be benefited.

16. In <u>Federal Nat'l Mortg. Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship.</u>, 153

68700-001\DOCS_DE:161055.1

B.R. 204, 214 (N.D. Ill. 1993), a single-asset real estate case in which the secured creditor held an interest in both the debtor's property and income generated from the property, the United State District Court for the Northern District of Illinois found:

> [T]he required adequate protection of rents is satisfied to the extent the Debtor reinvests the rents in the operation and maintenance of the property because the value of the secured creditor's interest in its collateral will thereby be increased.

Moreover, in In re 499 W. Warren Street Assocs, Ltd. P'ship, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992), the Northern District of New York Bankruptcy Court held that "[a] secured creditor's interest in the collateral itself is adequately protected when a portion of the rents are applied to its operation and maintenance." The proposition that, in real estate cases, using rents to maintain property constitutes adequate protection has been accepted by a number of other courts. See, e.g., In re Las Vegas Monorail Co., Case No. BK-S-10-10464-BAM, 2010 WL 1688811 (Bankr. D. Nev. Apr. 26, 2010); McCombs Prop. VI, Ltd. v. First Texas Sav. Ass'n (In re McCombs Prop. VI, Ltd.), 88 B.R. 261 (Bankr. C.D. Cal. 1988); see also In re Donato, 170 B.R. 247, 257 (Bankr. D. N.J. 1994)("The use of cash collateral to pay the operating expenses of the real property in question adequately protects the interest of secured lenders, however, even where the creditor is undersecured").

## THE INTERIM APPROVAL SHOULD BE GRANTED

17. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than fourteen (14) days after service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

18. Pursuant to Bankruptcy Rule 4001(b), the Debtor requests that the Court conduct

an expedited preliminary hearing on the Motion and (i) authorize the Debtor to use the Cash Collateral to (a) maintain and finance the ongoing operations of the Debtor in the ordinary course of business during the pendency of the Chapter 11 Case and (b) avoid immediate and irreparable harm and prejudice to the Debtor's estate and all parties in interest and (ii) schedule the Final Hearing on the relief requested herein.

19. Absent authorization from the Court to use Cash Collateral on an interim basis pending a Final Hearing, the Debtor will be immediately and irreparably harmed. As set forth above, the Debtor's ability to use Cash Collateral on the terms described herein is critical to its ability to operate its business in the ordinary course. Without the liquidity provided by the use of Cash Collateral, the Debtor's business will be brought to an immediate halt. In addition, the Debtor's ability to maintain business relationships with its vendors, suppliers and tenants and to meet other operating expenses will be comprised without the use of Cash Collateral. Serious and irreparable harm to the Debtor and its estate would occur, with disastrous consequences for the Debtor, its estate, and creditors of the Debtors.

## NOTICE

20. The Debtor shall serve notice of this Motion on: (a) the U.S. Trustee, (b) the Debtor's twenty (20) largest unsecured creditors, and (c) counsel to the Beneficiary. As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). The Debtor submits that no other or further notice need be provided.

## NO PRIOR REQUEST

No prior motion for the relief requested herein has been made to this or any other court.

7

**WHEREFORE**, the Debtor respectfully requests entry of an order, substantially similar to the proposed form of order attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: June 16, 2010

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Bradford J. Sandler
Bradford J. Sandler (DE Bar No. 4142)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
Telephone:   (302) 652-4100
Facsimile:   (302) 652-4400
Email:       bsandler@pszjlaw.com

- and -

Neal L. Wolf
Karen M. Borg
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street, Suite 1800
Chicago, IL 60602-4257
Telephone: (312) 696-4447
Facsimile: (312) 444-9294
Email: nwolf@butlerrubin.com
Email: kborg@butlerrubin.com